IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DEBRA FRANCE MASSENBURG, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY BERRYHILL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 5:16-CV-01351-LSC |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, Debra France Massenburg, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB"). Ms. Massenburg timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Massenburg was 57 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 32.) Her past work experiences include employment as a mattress salesperson, telemarketer,

1

secretary, and mortgage loan officer. (Tr. at 48-49, 203, 210-13, 227-33.) Ms. Massenburg claims that she became disabled on April 14, 2013, due to chronic stress syndrome, post-traumatic stress disorder ("PTSD"), major depression with psychosis, agoraphobia, panic disorder, memory loss, and cervical degenerative disease with multiple levels of foraminal stenosis. (Tr. at 30, 203.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Massenburg met the insured status requirements through the date of her decision. (Tr. at 12.) She further determined that Ms. Massenburg has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's anxiety disorder and an affective disorder are considered "severe" based on the requirements set forth in the regulations. (Tr. at 13.) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Plaintiff had the following RFC: she can perform a full range of work at all exertional levels with the following nonexertional limitations: she can understand and remember

simple instructions, can carry out short and simple instructions, and attend and concentrate for two-hour periods to complete an eight-hour workday on simple tasks with customary breaks and rests during the regular workday. (Tr. at 15.) In addition, the ALJ found that interaction and contact with the general public should be casual, criticism and feedback from supervisors and coworkers should be casual, and changes in the workplace should be gradually introduced. (*Id.*)

According to the ALJ, Ms. Massenburg is unable to perform any of her past relevant work, she is an "individual closely approaching advanced age," and she has a "high school education and is able to communicate in English" as those terms are defined by the regulations. (Tr. at 18-19.) Enlisting the aid of a Vocational Expert ("VE") and using Medical-Vocational Rule 201.25 as a guideline, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff is capable of performing, such as hand packager, janitor, and a warehouse worker. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 20.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there

is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Massenburg argues that the Commissioner's decision should be reversed and remanded for two reasons: (1) the ALJ failed to give enough weight to the opinion of her treating psychiatrist, and (2) the ALJ did not afford proper consideration to her subjective complaints of pain.

### A. Weight to Treating Psychiatrist's Opinion

As a general matter, the weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Within the classification of acceptable medical sources are the following different types of sources that are entitled to

different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, the opinions of a one-time examiner or of a non-examining source are not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Further, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Procedurally, the ALJ must articulate the weight given to different medical opinions and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" for discounting a treating physician's opinion exists when: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1241 (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Further, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in a physician's evaluation of a plaintiff's "condition and

9

the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Dr. M. Elizabeth Lachman, a psychiatrist, indicated that Plaintiff had been under her care since October 2012. (Tr. at 363, 365). However, there are no treatment records prior to September 2013, when Dr. Lachman provided a report that she characterized as a comprehensive psychiatric evaluation. (Tr. at 353-57, 366-69). Plaintiff reported to her a history of being physically and verbally abused by both of her husbands and experiencing the deaths of both parents and a sibling. (Tr. at 353-55, 366-69). Plaintiff also reported that she had found her fiancé of three years dead in bed in March 2013. (Tr. at 355, 367). Although the report contained no actual mental status evaluation or observations, Dr. Lachman diagnosed Plaintiff with major depressive disorder, recurrent, without psychotic features; PTSD; panic disorder with agoraphobia; and multiple biopsychosocial stressors. (Tr. at 353, 369). Dr. Lachman assigned a global assessment of functioning score ("GAF") of 41, and opined Plaintiff would not be able to work for at least the next 12 months. (Tr. at 353, 357, 369). GAF scores in the range of 41-50 suggest "serious symptoms

(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual—Text Revision 34 (4th ed. 2000) ("DSM-IV-TR").

Although Dr. Lachman indicated that she saw Plaintiff for follow ups every one-to-two months and treated her with pharmacotherapy and individual psychotherapy (tr. at 365), she provided no contemporaneous notes of these visits. Instead, Dr. Lachman completed three more reports, which are characterized as comprehensive psychiatric evaluations, in January 2014, August 2014, and May 2015. (Tr. at 363-65, 371-72, 443-45). In the January 2014 report, Dr. Lachman suggested that Plaintiff's symptoms "predispose her to a high safety risk in an occupational setting," that further attempts to return to work would lead to worsening of her overall functioning, and that she needed to focus on her mental health and treatment full time. (Tr. at 365, 372, 445). Dr. Lachman repeated similar language in the August 2014 and May 2015 reports. (Tr. at 363, 443.) In all three reports, Dr. Lachman opined that Plaintiff's "psychiatric symptoms led to a marked, severe, and sometimes extreme degree of impairment in all areas related to occupational functioning." (Tr. at 363, 365, 372, 443). Dr. Lachman also suggested

that Plaintiff would not be able to work for at least 12 to 24 months, if not permanently. (Tr. at 363, 365, 372, 443, 445).

The ALJ gave little weight to Dr. Lachman's opinions. (Tr. at 18). Substantial evidence in the record supports this conclusion and provides that the ALJ had good cause to do so. First, the ALJ noted that Dr. Lachman's opinions were unsupported by her treatment notes, since they contained no objective clinical evidence and suggested that Plaintiff was compliant with her treatment regimen with no reported medication side effects. (Tr. at 16, 363-72, 443- 47). As the ALJ noted, although Dr. Lachman indicated that she saw Plaintiff for follow ups every one to two months and treated her with pharmacotherapy and individual psychotherapy (tr. at 365), she provided no contemporaneous notes of these visits. Instead, Dr. Lachman completed three reports that contain substantially the same verbiage and summarize Plaintiff's symptoms, list diagnoses, and suggest she is unable to work. (Tr. at 17, 363-65, 371-72, 443-45). The ALJ also found the extreme limitations espoused by Dr. Lachman to be inconsistent with the fact that she had treated Plaintiff conservatively and never recommended any type of inpatient treatment or hospitalization. (Tr. at 18). The ALJ also found that Dr. Lachman's opinions that Plaintiff would be unable to work were on an issue reserved to the Commissioner and not entitled to any special weight or significance. (Tr. at 18).

Additionally, the ALJ considered that Dr. Lachman's assessment of marked, severe, and extreme limitations in all areas of functioning were inconsistent with Plaintiff's self-reported activities. (Tr. at 18). Although Plaintiff attempted to minimize her activities at her hearing (tr. at 31-45), she previously reported in a function report that she engaged in various activities of daily living, such as preparing her own meals, doing the laundry, washing dishes, cleaning, going for walks, driving to the store by herself, taking care of her pets, and visiting her son and friends. (Tr. at 219-22, 361-62). Plaintiff also indicated that she engaged in a number of hobbies, including watching television, gardening, sightseeing, bird watching, and going to the lake. (Tr. at 223). Contrary to Dr. Lachman's suggestion that Plaintiff would be unable to work with colleagues or accept supervision, Plaintiff previously reported no problems getting along with family, friends, neighbors, and others; getting along "very well" with authority figures; and never being fired or laid off of a job because of problems getting along with other people. (Tr. at 224-25).

The ALJ also properly noted that Dr. Lachman's opinions were not consistent with the other medical opinions of record, including those of Dr. Mary Arnold, a psychologist, who performed a consultative psychological evaluation of Plaintiff in October 2013 (tr. at 359-62), and State agency psychiatric consultant,

Dr. Robert Estock, who did not examine Plaintiff but reviewed the record and completed a mental functional capacity assessment in November 2013. (Tr. at 75-79).

Dr. Arnold's mental status evaluation—something that Dr. Lachman did not do—reported that Plaintiff's mood was anxious and she was tearful when speaking of loss of family and friends. (Tr. at 360). With regard to cognition, Dr. Arnold noted that Plaintiff was alert and oriented in all spheres and was able to recite the months of the year backwards, repeat six digits forwards and four digits backwards, perform simple calculations, and recalled three of three objects after a five-minute delay. (Tr. at 361). Dr. Arnold estimated her intelligence as low average with no evidence of cognitive deficits. (Tr. at 361). Dr. Arnold diagnosed Plaintiff with caffeine dependence; anxiety disorder, not otherwise specified; PTSD; and major depressive disorder, recurrent. (Tr. at 362). Dr. Arnold assigned a GAF score of 54, which indicates no more than moderate limitations. (Tr. at 362). *See also* DSM-IV-TR at p. 34. Dr. Arnold opined that Plaintiff had no more than moderate limitations of function. (Tr. at 359-62).

In giving Dr. Arnold's opinion great weight, the ALJ noted that it was consistent with Dr. Estock's assessment. After reviewing Dr. Lachman's September 2013 report and Dr. Arnold's consultative evaluation, Dr. Estock

assessed Plaintiff with affective and anxiety-related disorders that resulted in moderate restriction of activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties in maintaining concentration persistence, and pace. (Tr. at 75). Dr. Estock also opined that Plaintiff was able to understand, remember, and carry out simple instructions; attend and concentrate for two-hour work periods on simple tasks with customary breaks and rest during the regular workday; have casual contact with the general public; and receive casual, non-confronting, and supportive criticism and feedback from supervisors and co-workers. (Tr. at 77-78). State agency consultants are highly qualified specialists who are experts in Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Social Security Ruling ("SSR") 96-6p. It was thus reasonable for the ALJ to consider Dr. Estock's opinion. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 807 (11th Cir. 2014) (ALJ did not err in weighing medical evidence where non-examining physician's opinion was consistent with the record).

Because it was unsupported by treatment notes and inconsistent with other medical opinions in the record, the ALJ had good cause to discount the opinion of Dr. Lachman.

## B. Credibility Determination

Plaintiff testified at her hearing that she experiences recurring dreams about her fiancé dying in her arms and that she hallucinates in her dreams. (Tr. at 32-33). She explained that extreme fear overcomes her at unexpected times and she cannot perform what she was doing. (Tr. at 33). She said that stress triggers her panic attacks. (Tr. at 34). Plaintiff further testified that she experiences memory loss which she attributes to chemotherapy she underwent for breast cancer. (*Id.*) According to the Plaintiff, she cannot focus and her mind "is just everywhere." (Tr. at 41).

When a plaintiff attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929d(a), (b); Social Security Ruling ("SSR") 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged

symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.*

The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). "When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The Commissioner's regulations set forth the following factors an ALJ should consider when evaluating a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) any precipitating and aggravating factors; (4) medications taken to alleviate pain, including side effects and effectiveness; (5) treatment received to relieve pain; and (6) any other measures the claimant uses to relieve pain. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 (2016). The ALJ evaluates these factors in connection with the other evidence in the record to make a credibility determination. 20 C.F.R. § 404.1529(c)(4).

In the present case, the ALJ found the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 15). She then determined the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.*) The ALJ articulated several reasons for refusing to credit Plaintiff's testimony, all of which are supported by substantial evidence in the record. The ALJ stated that despite Plaintiff's complaints of disabling mental limitations, Plaintiff responded to conservative treatment and the record does not contain incidences of inpatient hospitalization or emergency treatment for mental conditions. (Tr. at 16.) Although Plaintiff sought emergency room treatment for various complaints, it was always for physical impairments. For instance, Plaintiff presented to the emergency department of Marshall Medical Center-South in December 2014 after injuring her left shoulder in a car accident. (Tr. at 376, 382). On examination of the left shoulder, Plaintiff had moderate tenderness and limited range of motion due to pain. (Tr. at 377). X-rays of the left shoulder revealed no evidence of fracture or dislocation. (Tr. at 377, 386). The attending physician diagnosed Plaintiff with tendonitis of the left shoulder. (Tr. at 378). Plaintiff presented to Huntsville Hospital in January 2015 with complaints of chest pain, neck pain, and numbness in her arms and legs. (Tr. at 395). A chest x-ray revealed no acute cardiopulmonary

process. (Tr. at 416). An MRI of the cervical spine revealed multilevel spondylosis and degenerative disc disease, most severe at C6-7. (Tr. at 403-04, 415). The attending physician diagnosed Plaintiff with acute chest pain and spinal stenosis in the cervical region. (Tr. at 408). In March 2015, Plaintiff presented to the emergency department at Crestwood Medical Center with complaints of high blood pressure and a pinched nerve in her neck. (Tr. at 429). The attending physician observed that Plaintiff's behavior was appropriate and she interacted appropriately with others and was in no apparent distress. (Tr. at 432). The attending physician diagnosed Plaintiff with uncontrolled hypertension and arthroplasty and prescribed medication. (Tr. at 430).

The ALJ also noted that despite Ms. Massenburg's complaints of disabling mental limitations, her participation in several daily activities suggests that she may not be accurately reporting her symptoms or they are not present at the severity indicated. (Tr. at 17, 219-22, 361-62.) While not dispositive, an ALJ may consider a claimant's self-reported daily activities in determining whether subjective complaints of pain are credible. *See Dyer*, 395 F.3d at 1212.

The ALJ also considered that both Dr. Arnold and Dr. Estock found that Plaintiff had no more than moderate limitations of mental functioning. (Tr. at 17, 75-79, 359-62). Plaintiff was often described as cooperative, oriented in all spheres,

cordial with others, and in no apparent distress. (Tr. at 14, 17, 219-26, 358-62, 429-30.)

In arguing that the ALJ failed to give appropriate weight to her testimony, Plaintiff argues again that the ALJ should have accepted Dr. Lachman's testimony. However, as previously discussed, the ALJ had good cause for giving Dr. Lachman's opinions little weight. For all of the above reasons, the ALJ's credibility determination was supported by substantial evidence.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Massenburg's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 8, 2018.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704